William J. Suwalski, Plaintiff and Counter-Defendant, Appellee, v. Arthur J. Suwalski, Defendant and Counter-Plaintiff, Appellant.

Gen. No. 51,134.

First District, Second Division.

October 20, 1967.

Basil N. Pyshos and Edward L. Stepnowski, of Chicago (Edward L. Stepnowski, of counsel), for appellant.

Stanley Werdell, of Chicago, for appellee.

ON REHEARING

MR. JUSTICE BRYANT delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Cook County, imposing a resulting trust in favor of the plaintiff, William Suwalski on title to property at 5954 West Eastwood, Chicago, Illinois. On appeal the defendant argues that the findings of the Master and the trial court and the decree are contrary to the manifest weight of the evidence. The defendant also contends that the Master's fees are excessive and that they should have been taxed against the corpus of the estate.

The transaction and surrounding circumstances culminating in this suit are as follows: In August of 1950, William Suwalski ("plaintiff" herein) and his wife (now deceased) undertook to purchase the property at 5954 Eastwood Avenue for their family home. The purchase price of the property was $15,500. Plaintiff and his wife were prepared to pay $4,500 and they hoped to obtain the remaining $11,000 through a mortgage of the property to Community Savings and Loan Association. Their hopes were disappointed when the Savings and Loan Company told them that in view of plaintiff's age a loan of only $9,500 could be made secured by a first mortgage and a cosignor would be required on the note. Arthur J. Suwalski ("defendant" herein), the son of plaintiff and his wife, was in 1950 a bachelor residing with his parents. He agreed to supply the $1,500 which his parents lacked to make the purchase and to guarantee repayment of the loan.

On September 22, 1950, plaintiff and defendant signed and submitted to the Savings and Loan Association a mortgage application. On October 14, 1950, plaintiff and his wife, plaintiff's attorney, Louis Klonowski (now deceased) and defendant, met with the representative of the Savings and Loan Association to sign documents pertaining to the purchase. Plaintiff, his wife and defendant executed a real estate contract, a mortgage and a note. On November 6, 1950, the purchase was completed and a trustee's deed was executed naming plaintiff, his wife, and defendant, as joint tenants.

Plaintiff, his wife and defendant moved into the new home shortly after the purchase. Defendant married in 1953 and did not thereafter reside at 5954 Eastwood Avenue. His parents continued to live in the home. Plaintiff's wife died in 1961 and plaintiff thereafter occupied the home by himself.

In 1963 plaintiff decided to sell the property. At that point he found that defendant's name was included in the deed as a joint tenant. He demanded a reconveyance from his son and offered to pay him $1,500. The defendant refused this offer and this suit followed.

It was the plaintiff's contention that the intent of the parties when the house was purchased was that defendant was merely lending his parents $1,500. The defendant answered that he was a purchaser for value and an owner in joint tenancy. He also counterclaimed in two counts. Count 1 of the defendant's countercomplaint averred that William J. Sulwalski severed the joint tenancy in 1963 by executing a mortgage and that as a result William Suwalski and Arthur Suwalski each hold title to an undivided one-half as tenants in common. Count 2 averred that Anna Suwalski and William J. Suwalski executed a joint mutual will, which was never rescinded, that this will was a contract, and that the beneficiaries thereof were Arthur J. Suwalski and his sister, Virginia Badgley, equally, subject to a life estate in William Suwalski, and further subject to a legacy of $1,500 due Arthur J. Suwalski.

The law on the subject of resulting trusts in Illinois is clear. Defendant cites two cases recently decided by the Illinois Supreme Court, First Nat. Bank & Trust Co. of Rockford v. Illinois Nat. Bank & Trust Co. of Rockford, 19 Ill2d 385, 167 NE2d 223, and Fender v. Yagemann, 29 Ill2d 205, 193 NE2d 794 (1963). The First Nat. Bank & Trust Co. case decided in 1960 in an opinion by Mr. Justice Schaefer is remarkably close on the facts to the instant case. That case recites law which is undisputed by either party. A resulting trust is based upon the presumed intention of the parties distilled from their conduct, and comes into being at the instant the title vests or not at all, the burden of proof being upon the party seeking to establish such a trust; and evidence, to be effective for this purpose, must be clear, convincing,

unequivocal and unmistakable, and if doubtful or capable of reasonable explanation, upon any theory other than the existence of the trust it is insufficient.

Plaintiff attempted to meet this heavy burden of proof by showing the following facts: that aside from the original $1,500 advanced by defendant, he has not paid any of the costs incurred in connection with the purchase of the said premises; he has not paid any of the mortgage payments on the mortgage indebtedness of $9,500 and that the present balance due on that mortgage is now $724.41; he has not paid any of the taxes assessed against the premises; he has not paid for any of the repairs and improvements; he has not paid any of the water bills; he has not paid any of the insurance premiums on the premises; he has exercised no indicia of ownership or claimed any interest in the premises; he did not know until 1963 that he was in title; he has not at any time informed the plaintiff or his mother that he has or claims any interest in said premises; that the joint last will of plaintiff and his wife recited an idebtedness of $1,500 to the defendant. Plaintiff also introduced testimony of Virginia Badgley, Robert Badgley and Paul Mann, corroborating his own testimony to the effect that the plaintiff and his wife never intended to have the defendant's name in the title. And plaintiff testified that attorney Klonowski did not inform him and that plaintiff did not know defendant was in title until 1963.

The defendant, in support of his argument denying that his intention had been to treat the $1,500 only as a loan, states: the application for a mortgage loan was signed by plaintiff and defendant only; the real estate contract was signed by all three persons; the note was signed by all three persons; the mortgage was signed by all three persons; mortgage payment receipts recite funds received from William Suwalski, et al.; the trustee's deed named all three persons as grantees, and the fact of joint tenancy was inserted three times; payment by

defendant of the $1,500 was directly to the Savings and Loan Association; that at the execution of the land purchase documents on November 16, 1950, his parents were represented by experienced counsel. Defendant also calls attention to the plaintiff's testimony to the effect that he did not execute a note to his son, did not promise to pay the $1,500 and never paid any part of the $1,500 or interest thereon.

██ Plaintiff's evidence requires some comment. It is undisputed that a resulting trust arises, if at all, at the time of the purchase and is based upon the intention of the parties at that time. Much of plaintiff's evidence relates to the actions of the parties after the transactions in dispute. That evidence can be considered only for the light it might inferentially shed upon the question of what the parties' intentions had been at the time of the purchase.

██ The joint will of plaintiff and his deceased wife insofar as it describes the $1,500 as an *indebtedness* is self-serving and therefore inadmissible for the plaintiff. But it is a declaration against interest insofar as it recognizes the $1,500 payment made by the defendant and is for that purpose admissible by the defendant. First Nat. Bank v. Illinois Nat. Bank & Trust Co., supra.

The plaintiff relies upon West v. Scott, 6 Ill2d 167, 128 NE2d 734 (1955), to support the proposition that it becomes the burden of the defendant to rebut a presumption of a resulting trust where plaintiff's evidence shows that the defendant's name was added as a grantee in a joint tenancy deed merely to enable the plaintiff to get a loan on the property being foreclosed. The defect in this contention is that the plaintiff in the West case had raised the presumption of a resulting trust by showing that the plaintiff alone had paid the entire consideration for the property and the defendant had made no contribution.

Thus, the circumstances of the West case are not matched by the facts of the instant case for the basis of defendant's defense to this suit is his contribution of $1,500 of the initial purchase payment. The burden of proof, therefore, does not shift from the plaintiff.

Even accepting plaintiff's contentions that he was unaware that his son was "in title" and that plaintiff's attorney did not inform him of that fact, we cannot disregard the facts (of which plaintiff and his wife must have been aware) that the defendant's signature was on the mortgage application, the real estate contract and the mortgage, as well as the loan note and that the defendant made payment of $1,500, not to the plaintiff and his wife, but directly to the Savings and Loan Company. These facts are not consistent with the theory that defendant was merely a lender and guarantor, for if that were so, there would have been no reason for defendant to have done anything but give his father the $1,500 and sign the note. It is also clear that the Savings and Loan Association understood from the outset that defendant was not merely a lender and guarantor. Finally, the facts that there was no note evidencing a loan from defendant to plaintiff, no agreement concerning interest or repayment and apparently no offer or demand for repayment over the thirteen years between the purchase and plaintiff's attempted sale, suggest that this arrangement was not considered as simply a loan.

■ In our view the best argument that plaintiff can advance on this evidence is that the parties did not fully and clearly consider the arrangements they were making in 1950. This definitely does not meet the demanding test which the Supreme Court restated in First Nat. Bank v. Illinois Nat. Bank & Trust Co., supra. The decree of a resulting trust for the plaintiff must be reversed.

425

■ We turn to defendant's counterclaim. Count 1 averred that the joint tenancy was severed by William Suwalski, plaintiff-counterdefendant, in 1963 when he executed a mortgage of the property. This point was not argued in appellant's brief and is therefore waived under Supreme Court Rule 341 (e) (7).

Count 2 averred that William Suwalski and Anna Suwalski had executed a joint and mutual will which was a contract, that defendant-counterplaintiff was a third-party beneficiary thereunder, and that subject to a life estate in William Suwalski and a $1,500 legacy due defendant-counterplaintiff he was to share his parents' estate equally with his sister, Virginia Badgley. On Page 11 of his Brief and Argument, appellant states: "Due regard for the existing law on resulting trusts would obviate all collateral issued (sic) as to the joint and mutual will." Because we have reversed the decree declaring a resulting trust and because appellant's statement makes it clear that Count 2 of the countercomplaint was pleaded as an alternative to defendant's defense to the resulting trust suit we do not further consider the counterclaim.

■ Defendant also contends that the master's fees are excessive and that the fees should have been assessed against the corpus of the estate. The trial court found that the certificate of services, fees and charges amounting to $2,819.87 by Joseph S. Fiffer, Master in Chancery, was reasonable. Defendant claims that this amount was excessive. We are of the opinion that the finding of the trial court on the matter of fees should not be disturbed.

■ The equities of this suit and countersuit require that the costs, including master's fees, be shared equally by the plaintiff, William Suwalski, and the defendant, Arthur Suwalski.

The decree is reversed and the cause is remanded with instructions to enter a decree denying a resulting trust,

apportioning costs equally and for further proceedings not inconsistent with these views.

Decree reversed and cause remanded with instructions.

LYONS, P. J. and BURKE, J., concur.